[Cite as *State v. Jones*, 2014-Ohio-3740.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-80 |
| v. | : | (C.P.C. No. 12CR-10-5337) |
| Delrico E. Jones, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 28, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Defendant-appellant, Delrico E. Jones, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of two counts of felonious assault and a one-year firearm specification, and sentencing him to a total of ten years incarceration and payment of $50,000 in restitution. For the following reasons, we reverse and remand for resentencing and an evidentiary hearing on restitution.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 18, 2012, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11, with accompanying three-year firearm specifications,

in violation of R.C. 2941.145.  The charges arose from the shootings of Shawn Walker (Count 1) and William Walker (Count 2) on August 12, 2012.

{¶ 3}  On October 16, 2013, appellant entered guilty pleas to the felonious assault charges, as alleged in Counts 1 and 2 of the indictment, and a one-year firearm specification, in violation of R.C. 2941.141, corresponding to Count 1.  In exchange for the guilty pleas, plaintiff-appellee, State of Ohio, requested that the trial court enter a nolle prosequi on the firearm specification attached to Count 2.

{¶ 4}  At the plea hearing, the prosecutor provided the following uncontested factual summary.  On August 12, 2012, appellant and another man went to the Walkers' residence and engaged in a verbal altercation with Shawn and William over some money.  During this incident, appellant produced a handgun but did not use it.  Appellant and the man left and went to a nearby store.  Appellant later returned to the Walkers' residence with three other men.  A physical altercation ensued, during which appellant shot Shawn in the leg, and one of the other men shot William in the arm.  Appellant and the three men then fled the scene.  Appellant was apprehended on October 10, 2012.  Police recovered a gun nearby, which matched bullet casings found at the scene of the shooting.

{¶ 5}  The trial court accepted appellant's guilty pleas and found him guilty of two counts of felonious assault and a one-year firearm specification.  The court ordered a presentence investigation report and set the matter for sentencing.

{¶ 6}  At the November 21, 2013 sentencing hearing, both Shawn and William, along with Howard Walker, who was also present during the shootings, provided statements regarding the impact of appellant's actions on their lives.  William also told the court, "I got medical bills I can't pay" resulting from being shot in the arm by appellant's accomplice.  (Nov. 21, 2013 Tr., 27.)  When the trial court inquired as to the amount of those medical bills, William responded, "it's up over 100 some thousand dollars. * * * My bills are still going."  (Nov. 21, 2013 Tr., 27-28.)  At the conclusion of the hearing, the trial court imposed a period of six years imprisonment on Count 1, with an additional one year for the firearm specification, and a period of six years imprisonment on Count 2, to be served consecutively, for an aggregate 13-year prison term.  The trial court also ordered appellant to pay $50,000 in restitution with no deferral.

{¶ 7}   Immediately after sentence was imposed, appellant's counsel objected to the restitution order and argued that the award lacked supporting documentation.  Upon appellant's request, the court permitted appellant to make a statement, in which appellant averred that he did not return to the Walkers' residence with the intention of harming anyone, but, rather, he returned because one of the residents requested that he return to discuss whether he had stolen some money.  According to appellant, this discussion ultimately resulted in the shootings.

{¶ 8}   Following appellant's statement, the trial court inquired if any documentation had been provided regarding the restitution; the prosecutor answered in the negative.   The trial court then modified appellant's sentence to five years imprisonment on Count 1, with an additional one year for the firearm specification, and a period of four years imprisonment on Count 2, to be served consecutively, for an aggregate ten-year prison term.  The trial court again ordered appellant to pay $50,000 in restitution, but deferred payment until after appellant's release from prison.   On January 2, 2014, the trial court issued a judgment entry memorializing appellant's sentence.

## II.  ASSIGNMENTS OF ERROR

{¶ 9}   In a timely appeal, appellant asserts the following two assignments of error:

> [I.] The trial court committed plain error in imposing consecutive sentences without making the necessary findings in violation of R.C. 2929.14(C)(4).

> [II.] The trial court erred by ordering restitution when the record did not contain competent, credible evidence establishing the amount of loss sustained by the victim.

### A.  First Assignment of Error

{¶ 10} In his first assignment of error, appellant contends the trial court committed plain error in imposing consecutive sentences without making the necessary findings required by R.C. 2929.14(C)(4).

{¶ 11} We note initially that appellant did not object to the imposition of consecutive sentences at the sentencing hearing; thus, he has forfeited all but plain error. *See* Crim.R. 52(B); *State v. Wilson*, 10th Dist. No. 12AP-551, 2013-Ohio-1520, ¶ 8.  Under

Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection." *State v. Gullick*, 10th Dist. No. 13AP-26, 2013-Ohio-3342, ¶ 3, citing *State v. Tichon,* 102 Ohio App.3d 758, 767 (9th Dist.1995).

{¶ 12} R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 13} Although the trial court need not use talismanic words to comply with R.C. 2929.14(C)(4) before imposing consecutive sentences, the trial court must make clear on the record that it made the required findings. *State v. Revels*, 10th Dist. No. 12AP-831, 2014-Ohio-795, ¶ 10, citing *State v. Boynton*, 10th Dist. No. 12AP-975, 2013-Ohio-3794, ¶ 9, citing *State v. Marton*, 8th Dist. No. 99253, 2013-Ohio-3430, ¶ 13 ("it must be *clear*

*from the record that the trial court actually made the findings required* by statute"). (Emphasis sic.)

{¶ 14} The state essentially concedes that the trial court did not comply with R.C. 2929.14(C)(4). Indeed, the state avers in its brief that, "[a]lthough the trial court did not say the 'magic words' required by R.C. 2929.14(C)(4), its comments at the sentencing hearing indicate that it would have had no problem making the statutory findings if an objection had been lodged or the issue otherwise had been brought to its attention." (Appellee's Brief, 4-5.)

{¶ 15} Pursuant to our review, we note that the trial court did state that it "considered all the factors this court is required to consider before imposing a sentence" and that "this is a case * * * where the factors demand and require consecutive sentences." (Nov. 21, 2013 Tr., 35, 37.) In addition, the trial court discussed the seriousness of appellant's offenses and the need to punish him for committing the offenses. In particular, the court averred that appellant had returned to the Walkers' residence after the initial verbal confrontation, shot one victim, and was responsible for the second victim being shot by an assailant who accompanied appellant to the residence. The court further stated that the victims had sustained serious injuries in the shooting. The court also observed that the victims had helped appellant in the past, and appellant had failed to assist law enforcement in finding the other offenders. In addition, the trial court averred that "[t]here's a price to pay for shattering the trust and the lives of folks who took you in" and that appellant had "to pay" for the "stupid decisions" he made. (Nov. 21, 2013 Tr., 36.) However, the trial court did not make the findings required by R.C. 2929.14(C)(4).

{¶ 16} It is established in this district that "when the record demonstrates that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences on multiple offenses, 'appellant's sentence is contrary to law and constitutes plain error.' " *State v. Ayers*, 10th Dist. No. 13AP-371, 2014-Ohio-276, ¶ 15, quoting *Wilson* at ¶ 18; *Boynton* at ¶ 12; *see also State v. Bailey*, 10th Dist. No 12AP-699, 2013-Ohio-3596, ¶ 46; *State v. Hunter*, 10th Dist. No. 13AP-196, 2013-Ohio-4013, ¶ 9; *State v. Castlin*, 10th Dist. No. 13AP-331, 2013-Ohio-4889, ¶ 8-9; *State v. Phipps*, 10th Dist. No. 13AP-351, 2013-Ohio-5546, ¶ 15; *State v. Bender*, 10th Dist. No. 12AP-934, 2013-Ohio-2777, ¶ 7; *Revels* at ¶ 11; *State v. V.J.*, 10th Dist. No. 13AP-799, 2014-Ohio-

2618, ¶ 39.  In addition to this court's jurisprudence, the Supreme Court of Ohio has very recently held that, "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, ____ Ohio St.3d ____, 2014-Ohio-3177, syllabus.

{¶ 17} The state argues that this case should not be remanded for resentencing despite the trial court's failure to comply with R.C. 2929.14(C)(4).  The state first contends that this court's decisions in *Wilson* and its progeny conflict with our decision in *State v. Gilbert*, 10th Dist. No. 12AP-142, 2012-Ohio-5521, and that such conflict is "en-banc-worthy."  (Appellee's Brief, 8.)   In *Revels*, we considered and rejected this identical argument, stating:

> [W]e recently denied the state's application for en banc consideration in *State v. Castlin*, 10th Dist. No. 13AP-331, 2014-Ohio-223, ¶ 5, finding that there is "no way to link the analysis in *Gilbert* * * * to the precedent established in *Wilson* and its progeny."  Accordingly, *Gilbert* does not assist the state in arguing against requiring compliance with R.C. 2929.14(C)(4).

*Id.* at ¶ 17.

{¶ 18} The state also contends that, even if appellant's sentence is contrary to law, appellant cannot demonstrate plain error.  The state specifically maintains that the evidence supports the imposition of consecutive sentences, and the record provides no indication that the trial court would have sentenced appellant differently had it made the R.C. 2929.14(C)(4) findings on the record.  As we acknowledged above, the record demonstrates that the trial court was well aware of the seriousness of appellant's offenses and believed that appellant needed to be punished for his actions.  However, the court was mandated by statute to make the R.C. 2929.14(C)(4) findings on the record.  Because the trial court failed to do so, appellant's sentence is contrary to law and constitutes plain error.  *Boynton* at ¶ 12, citing *Wilson* at ¶ 18.  Accordingly, we must remand this matter to the trial court to consider whether consecutive sentences are appropriate, pursuant to R.C. 2929.14(C)(4), and, if so, to make the proper findings on the record at the sentencing

hearing and incorporate those findings into its sentencing entry. *Bonnell*; *Revels; V.J.* Appellant's first assignment of error is sustained.

### B. Second Assignment of Error

{¶ 19} In his second assignment of error, appellant contends the trial court erred by ordering appellant to pay $50,000 in restitution to William. Appellant argues that the record does not contain competent, credible evidence to support the restitution order, as "the only information in the record regarding financial loss sustained by a victim is William Walker's unsupported statement that the medical bills were 'up over 100 some thousand dollars.' " (Appellant's Brief, 11.)

{¶ 20} R.C. 2929.18(A)(1) authorizes a trial court to impose restitution as part of a sentence in order to compensate the victim for economic loss. "A trial court has discretion to order restitution in an appropriate case and may base the amount it orders on a recommendation of the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, but the amount ordered cannot be greater than the amount of economic loss suffered as a direct and proximate result of the commission of the offense." *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, paragraph one of the syllabus; R.C. 2929.18(A)(1). As relevant here, "[e]conomic loss" is defined in R.C. 2929.01(L) as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any * * * medical cost * * * incurred as a result of the commission of the offense."

{¶ 21} "The amount of restitution ordered by a trial court must bear a reasonable relationship to the loss suffered." *State v. Norman*, 10th Dist. No. 12AP-505, 2013-Ohio-1908, ¶ 66, citing *State v. Blay*, 10th Dist. No. 10AP-247, 2010-Ohio-4749, ¶ 7. "An award of restitution is limited to the actual loss caused by the defendant's criminal conduct for which he [or she] was convicted, and there must be competent and credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *Id.*, citing *Blay* at ¶ 7.

{¶ 22} This court applies an abuse of discretion standard to a trial court's restitution order. *Id.* at ¶ 67, citing *State v. Whiting*, 2d Dist. No. 20168, 2004-Ohio-5284, ¶ 7. "A trial court abuses its discretion when it orders restitution in an amount that has not been determined to bear a reasonable relationship to the actual loss suffered as a

result of the defendant's offense."  *State v. Aliane*, 10th Dist. No. 03AP-840, 2004-Ohio-3730, ¶ 15.   "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} The evidence to support a restitution order can take the form of either documentary evidence or testimony.  *State v. DeJoy*, 10th Dist. No. 10AP-919, 2011-Ohio-2745, ¶ 33, citing *State v. Holt*, 8th Dist. No. 95520, 2011-Ohio-1582; *Columbus v. Martin*, 10th Dist. No. 11AP-937, 2012-Ohio-2654, ¶ 12 (construing identical language in R.C. 2929.28); *State v. Hatmaker*, 12th Dist. No. CA2012-10-198, 2013-Ohio-3202 (victim's loss may be substantiated through documentary evidence or testimony, including that of the victim); *In re Czika*, 11th Dist. No. 2007-L-009, 2007-Ohio-4110, ¶ 8 (amount of loss may be established with documentary evidence or testimony); *In re Hatfield*, 4th Dist. No. 03CA14, 2003-Ohio-5404, ¶ 9 (victim may establish loss through documentary evidence or testimony).

{¶ 24} A victim's testimony alone is sufficient to establish economic loss for the purpose of a trial court's restitution order.  *State v. Policaro*, 10th Dist. No. 06AP-913, 2007-Ohio-1469 (restitution order supported by victim's testimony, which was sufficient evidence to establish the value of her loss for the purpose of the trial court's restitution order); *State v. Tabasso*, 8th Dist. No. 98248, 2013-Ohio-3721 (victim's testimony regarding accumulated medical bills and lost wages established value of loss and amount of restitution awarded the victim); *State v. Sexton*, 1st Dist. No. C-110037, 2011-Ohio-5246 (victim's testimony was competent, credible evidence substantiating loss and supporting restitution award; substantiation of testimony by documentary evidence not required by R.C. 2929.18(A)(1)); *Czika* (no absolute requirement that the victim must demonstrate loss through documentary evidence); *Hatfield* (theft victim's testimony alone established economic loss without resort to documentary evidence); *State v. McClain*, 5th Dist. No. 2010 CA 00039, 2010-Ohio-6413 (unrebutted testimony of victim, without written documentation, sufficient to establish economic loss).

{¶ 25} In the present case, William averred at the sentencing hearing, "I got medical bills I can't pay" resulting from being shot in the arm by appellant's accomplice. (Nov. 21, 2013 Tr., 27.)  When the trial court inquired as to the amount of those medical

bills, William responded, "it's up over 100 some thousand dollars. * * * My bills are still going."  (Nov. 21, 2013 Tr., 27-28.)  No documentation supporting William's statement was offered.  The trial court expressly based its $50,000 restitution order solely on William's statement, stating, "I heard some statements for restitution in the ballpark of $100,000.  The court's going to order restitution in the amount of $50,000."  (Nov. 21, 2013 Tr., 39.)  As noted above, this court and others have determined that a restitution order may be supported solely by the victim's testimony without documentary corroboration. *Policaro*; *Tabasso*; *Sexton*; *Czika*; *Hatfield*; *McClain*.

{¶ 26} However, appellant's counsel objected to the trial court's restitution order.  R.C. 2929.18(A)(1) states that "[i]f the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount."  The Supreme Court of Ohio has held that "[a] trial court is required to conduct a hearing on restitution * * * if the offender, victim, or survivor disputes the amount of restitution ordered."  *Lalain* at paragraph two of the syllabus.  In addition, this court has stated " 'R.C. 2929.18(A)(1) "expressly provides that a trial court *shall* hold a hearing on restitution if the victim, offender, or survivor disputes the amount." ' "  (Emphasis sic.)  *Norman* at ¶ 69, quoting *Blay* at ¶ 12, quoting *State v. Lamere*, 3d Dist. No. 1-07-11, 2007-Ohio-4930, ¶ 10.

{¶ 27} The present case is similar to *Aliane*.  There, the defendant argued that the trial court erred in ordering him to pay restitution because there was no evidence presented as to the actual amount of restitution owed.  At the sentencing hearing, the trial court stated that restitution was established by the probation department.  Furthermore, the trial court indicated in its journalized entry that it had ordered and received a pre-sentence investigation report ("PSI").  This court noted that "[t]he trial court may consider a PSI when ordering restitution."  *Id.* at ¶ 16, citing *State v. Brumback*, 109 Ohio App.3d 65, 83 (9th Dist.1996); *State v. Williams*, 34 Ohio App.3d 33, 34 (2d Dist.1986).

{¶ 28} This court further noted, however, that both appellant and his attorney had objected to the amount of restitution ordered.  Citing the language in R.C. 2929.18(A)(1) mandating that a trial court hold a hearing on restitution if the victim, offender or survivor disputes the amount, this court found that the trial court committed reversible error by failing to comply with the requirements of the statute.  Accordingly, we reversed

the portion of the trial court order relating to restitution and ordered the trial court to conduct a hearing to determine the correct amount of restitution owed.

{¶ 29} In the present case, because appellant's counsel specifically disputed the amount of restitution ordered, the trial court was required to hold a hearing to determine the appropriate amount of restitution and failure to do so constitutes reversible error. *Lalain*; *Norman*; *Blay*; *Lamere*; *Aliane.* Upon remand, the trial court shall conduct an evidentiary hearing in compliance with the requirements of R.C. 2929.18(A)(1). Accordingly, appellant's second assignment of error is sustained.

## III. CONCLUSION

{¶ 30} Having sustained appellant's first and second assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for resentencing and an evidentiary hearing on restitution.

*Judgment reversed;*
*cause remanded with instructions.*

TYACK and O'GRADY, JJ., concur.

_____